UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| ARNETT PHYSICIAN GROUP, P.C., ARNETT CLINIC, LLC, ARNETT HEALTH PLANS, INC., and ARNETT HMO, INC., <br><br>       Plaintiffs, <br><br>            v. <br><br> GREATER LAFAYETTE HEALTH SERVICES, INC., SISTERS OF ST. FRANCIS HEALTH SERVICES, INC., DAVID R. EMERY, M.D., SHAHID M. AHSAN, M.D., KAREN K. CLARK, M.D., KEVIN W. DODT, M.D., LINDA G. EMERY, M.D., JOSEPH A. FREDERICK, M.D., SANJAY GARG, M.D., SEEMA GARG, M.D., MARK D. GRIFFITH, M.D., CATHERINE I. HATVANI, M.D., R. MICHAEL HOLMES, M.D., IMAD E KHADRA, M.D., DENNIS G. LOCKREY, M.D., RITA A. MANKUS, M.D., KIETH W. MARCH, M.D., CECILIA MAY, M.D., JOHN F. PLASCAK, M.D., GERALD W. WEHR, M.D., ANNA L. WELCH, M.D., DEBBIE WRIGHT, M.D. AND ADEL S. YAACOUB, M.D., <br><br>       Defendants. | Case No. 4:05-CV-00016-AS |

**MEMORANDUM, ORDER AND OPINION**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Greater Lafayette

Health Services, Inc., and Sisters of St. Francis Health Services (collectively "GLHS") and the

various named individual doctors ("Defendant Doctors," and together with GLHS, "Defendants")

filed a motion to dismiss the complaint of Plaintiffs Arnett Physician Group, P.C., Arnett Clinic, LLC, Arnett Health Plans, Inc., and Arnett HMO, Inc., (collectively "Arnett" or "Plaintiffs) with prejudice.  The allegations involve certain contract disputes and negotiations between the parties, a decision by GLHS to hire Defendant Doctors, public statements made by GLHS regarding the construction of a new hospital to be built by Arnett, and the filing of a lawsuit by Defendant Doctors against Arnett in state court.  The Court held oral arguments on this matter in Lafayette, Indiana on July 22, 2005, and the issues have been fully briefed by the parties.

### I.  Standard of Review

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal is appropriate if the Complaint sets forth no viable cause of action upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); *Challenger v. Ironworkers Local No. 1,* 619 F.2d 645, 649 (7th Cir. 1980).  In assessing the propriety of a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), the Court accepts all well-pleaded factual allegations in the complaint and the inferences reasonably drawn from them as true.  *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir.1999).   Plaintiffs' claims are subject to dismissal only if it is clear that he can prove no set of facts consistent with the allegations in the complaint that would entitle him to relief.  *Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir.1999).

Furthermore, the Court is not required to accept the plaintiffs' legal conclusions.  *Fries v. Helsper*, 146 F.3d 452, 456 (7th Cir. 1998), *cert. denied* 525 U.S. 930 (1998).  Dismissal of a complaint is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (*citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

## II.  Discussion

### A.  Antitrust Claims Against GLHS

Defendants have advanced several arguments in favor of dismissal.  Those include: 1) the geographic markets alleged are facially implausible and unsupported by any allegations satisfying relevant market legal standards; 2) the type of conduct attacked in the Complaint is not exclusionary or objectively anticompetitive and does not violate the antitrust laws; and 3) Arnett lacks antitrust standing because the Complaint alleges no direct proximate cause link between any supposed exclusionary conduct of Defendants and Arnett's decision to abandon its hospital plans.  Each of these grounds will be discussed below.

The Seventh Circuit Court of Appeals has stated, "where plaintiffs fail to identify any facts from which the court can 'infer that defendants had sufficient market power to have been able to create a monopoly,'" their antitrust claims may be properly dismissed.  *42nd Parallel North v. E Street Denim Co.*, 286 F.3d 401, 406 (7th Cir. 2002) (citations omitted).  An examination of the Plaintiffs' Complaint reveals that it does not contain facts which allow an inference of sufficient monopoly power to prevail on their antitrust claims.

Plaintiffs have failed to refer to the rule of reasonable interchangeability and cross-elasticity of demand, an omission held to be fatal in *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997).  Furthermore, the proposed eight county market would necessarily ignore the commercial realities of the Lafayette, Indiana area.  Such a market would exclude alternative hospitals in Logansport, Rensselaer, Kokomo, and, Indianapolis.  When considering a motion to dismiss, this Court "is not required to don blinders and to ignore the

commercial reality." *42nd Parallel North*, 286. F.3d at 406.  Plaintiffs' Complaint also omits allegations regarding hospital draw areas, patient flows, or physician admission practices.  As the Seventh Circuit has stated, "invocation of antitrust terms of art does not confer immunity from a motion to dismiss; to the contrary, these conclusory statements must be accompanied by supporting factual allegations." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1110 (7th Cir. 1984).  Moreover, the Court notes that Plaintiffs' reliance on square mile calculations and Lafayette's "federally recognized" MSA is unpersuasive.  Neither leads to a reasonable inference of monopoly power.  In sum, Plaintiffs have failed to plead facts relating to the relevant geographic market which would allow an inference of monopoly power.

Plaintiffs similarly fail to plead facts sufficient to show antitrust standing and antitrust injury.  They allege that actions by Defendants forced Arnett to abandon its plans to build its own acute care hospital.  (Compl. ¶ 68).  To demonstrate antitrust standing, a plaintiff must demonstrate "a direct link between the antitrust violation and the antitrust injury." *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 998 F.2d 391, 395 (7th Cir. 1993).  "[T]he doctrine of antitrust standing is the equivalent of the common law tort limitation of proximate cause." *Sanner v. Bd. of Trade of the City of Chicago*, 62 F.3d 918, 927 (7th Cir. 1995) (citing *Greater Rockford*, 998 F.2d at 394).

Neither the disputes involving the radiology contract nor the disputes involving the HMO contract amount to antitrust injury.  Plaintiff offers no authority to support the proposition that a hospital violates the antitrust laws by substituting one exclusive radiology services provider for another – a decision about which the Plaintiffs were given 12 months notice.  In fact, the Seventh Circuit has clearly held that "the staffing decision at a single hospital was not a violation of

4

section 1 of the Sherman Act." *BCB Anesthesia Care Ltd v. Passavant Mem'l Area Hosp. Ass'n*, 36 F.3d 644 (7th Cir. 1994). Furthermore, Plaintiffs have failed to allege any facts which allow an inference of any causal connection between the termination of the radiology contract and Arnett's decision not to build an acute care hospital. As for the termination of the HMO agreement, Arnett has not shown any harm to competition in any relevant market. Arnett was given 26 months advance notice of this decision and they offer no allegations that allow an inference of a causal connection between this termination and the alleged antitrust harm. At best, they have alleged harm to Arnett, which "resulted in diversion of Arnett resources, both time and financial, away from the Arnett Hospitals Project." (Complaint ¶ 53). Antitrust laws, however, "were enacted for 'the protection of *competition* and not *competitors*." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1997) (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962)).

The renegotiation of the HMO contract is similarly insufficient to show antitrust standing. GLHS announced that it intended to terminate the HMO agreement "for the purpose of renegotiating higher reimbursement rates." (Compl. ¶ 49). "[T]he Sherman act does not prohibit any entity possessing market power from simply raising prices in order to increase revenues." *Endsley v. City of Chicago*, 230 F.3d 276, 283 (7th Cir. 2000). Similarly, renegotiating higher reimbursement rates to increase revenues does not give rise to an antitrust violation.

Arnett alleges that the GLHS "publicity campaign" against construction of a new hospital causes antitrust injury. Public expressions of opinion about competitors' plans cannot provide the basis for an antitrust claim and such conduct is clearly lawful. *See Schachar v. American Acad. of Opthalmology, Inc.*, 870 F.2d 397 (7th Cir. 1989). As the Seventh Circuit stated in

*Schacar*, "[i]f such statements should be false or misleading or incomplete or just plain mistaken, the remedy is not antitrust litigation but more speech – the marketplace of ideas." *Id.* at 400.

The hiring of the Defendant Doctors by GLHS also does not constitute anticompetitive activity and does not provide antitrust standing to Arnett. This hiring of doctors to be used as a "core" of a new physicians clinic that competes directly with Arnett Clinic" does not amount to antitrust injury. As stated earlier, antitrust laws protect competition, not competitors. *Brunswick*, 429 U.S. 477.

Finally, the court finds it worthwhile to note that Plaintiffs' argument relating to the entire "course of conduct" by Defendants is unpersuasive. None of the individual actions alleged by Plaintiffs is unlawful, and this Court will not cobble those legal actions together in an attempt to divine some overall wrongdoing. *See United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001) (rejecting a general "course of conduct" argument).

**B. Defendant Doctors**

Arnett bases its antitrust allegations against the individually named Defendant Doctors on the filing of a lawsuit by those Doctors against Arnett in Indiana state court. Under the so-called "*Noerr-Pennington*" doctrine, those who petition the government for redress are generally immune from antitrust liability. *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *Mine Workers v. Pennington*, 381 U.S. 657 (1965). This immunity extends to "the approach of citizens . . . to administrative agencies . . . and to courts." *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). This doctrine does not provide antitrust immunity to "sham" activities or "sham" lawsuits, however. *Noerr*, 365 U.S. at 144.

In *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 60-61 (1993), the Supreme Court outlined a two-part definition of sham litigation to determine whether an antitrust defendant is entitled to immunity under *Noerr-Pennington*. First, to be a sham lawsuit, the suit "must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Id*. at 60. Second, "the court should focus on whether the baseless lawsuit conceals 'an attempt to interfere *directly* with the business relationships of a competitor,' through the 'use [of] the governmental *process* – as opposed to the *outcome* of that process – as an anticompetitive weapon." *Id*. at 60-61 (citations omitted). Furthermore, "[o]nly if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation." *Id*. at 60. Therefore, "if an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr*, and an antitrust claim premised on the sham exception must fail." *Id*.

Applying the standards outlined above to this case, it is clear that Plaintiffs can prove no set of facts which would establish that the Defendant Doctors' declaratory judgment action against Arnett is a sham. The Defendant Doctors initiated a lawsuit to seek a declaration that they are not bound by any restrictive covenant or non-compete obligations under their existing contracts with Arnett. Such covenants in restraint of trade are disfavored under Indiana law and are often the subject of legal challenges. *Licocci v. Cardinal Associates, Inc.*, 445 N.E.2d 556, 561 (Ind. 1983); *CCC Info. Servs., Inc. V. Am. Salvage Pool Ass'n*, 230 F.3d 342 (7th Cir. 2000). Additionally, the trial court has twice rejected motions to dismiss the action under Indiana Trial Rule 12(b)(6). Defendants' Mem. in Support, Exhibits 1 and 2. The state court has also allowed Defendant Doctors to file a Third Amended Complaint. The suit, as a matter of law, is not

7

"objectively baseless." The state court case is in the hands of an excellent and very experienced state court trial judge. It is not this Court's intention to interfere with the ongoing processes of the state court in that case by wading into the merits of that pending state court case here.

### C. State Law Claims

The federal law claims in this lawsuit have been dismissed. Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise its supplemental jurisdiction as to the remaining state law claims. "[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). Those state law claims are therefore dismissed without prejudice.

### III. Conclusion

For all of the reasons discussed above, Defendants' motion to dismiss is **GRANTED**. Plaintiffs' federal law claims are dismissed with prejudice. The remaining state law claims are dismissed without prejudice.

**IT IS SO ORDERED.**

Date: July 29, 2005                                          S/ ALLEN SHARP
                                                             **ALLEN SHARP, JUDGE**
                                                             **UNITED STATES DISTRICT COURT**